Filed 6/12/23  Fauerbach v. Carlisle CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## THIRD APPELLATE DISTRICT

(El Dorado)

----

| | |
|---|---|
| CAROL FAUERBACH, | C092170 |
| Plaintiff and Respondent, | (Super. Ct. No. PFL20150037) |
| v. | |
| WILLIAM CARLISLE, | |
| Defendant and Appellant. | |

This appeal is one in a series of appeals concerning an ongoing feud between former spouses, William Carlisle and Carol Fauerbach.  Carlisle, an attorney representing himself in propria persona, asserts a myriad of arguments challenging the trial court's May 19, 2020 order, in which the trial court denied his claims of exemption from levies to enforce Fauerbach's money judgment.  We deem the majority of Carlisle's arguments forfeited and find no merit in the remainder.  We thus affirm.

## FACTUAL, PROCEDURAL, AND LEGAL BACKGROUND

We take some of the background facts from our unpublished opinions in prior appeals between the parties because Carlisle failed to provide this court with an adequate record from which to glean all pertinent facts. (Cal. Rules of Court, rule 8.115(b)(1) [court may cite an unpublished case "[w]hen the opinion is relevant under the doctrines of law of the case, res judicata, or collateral estoppel"].)

"The parties married in 1991 and divorced in 2015." (*Fauerbach v. Carlisle* (Mar. 8, 2023, C090306) [nonpub. opn.].) "Among other rulings made in a 2018 judgment arising out of the parties' divorce proceedings, the trial court (1) divided the parties' community property, (2) ordered Carlisle to pay $8,000 a month in permanent spousal support to Fauerbach, (3) ordered Carlisle to pay to Fauerbach $125,000 in sanctions pursuant to Family Code section 271, and (4) awarded to Carlisle" certain bank accounts and funds. (*Ibid*., fn. omitted.) This court upheld the 2018 judgment in 2021. (*In re Marriage of Carlisle* (Jan. 6, 2021, C086346) [nonpub. opn.].)

At issue in this appeal is the trial court's denial of Carlisle's claims of exemption from levies to enforce Fauerbach's money judgment. The trial court explained the dispute centered around "monies levied from purported retirement accounts held at Bank of the West ($147,564.83), Union Bank ($143,143.54), El Dorado Savings [Bank] ($57,825.07), and U.S. Bank ($1,888.83)" and "$30,000 deposited in an account held at Bank of the West, which [Carlisle] claims is not subject to levy because it was money being held in trust (relating to an attorney fee lien) at the time of levy." To set the stage for the trial court's ruling, we briefly provide a general summary of the pertinent law regarding claims of exemption.

"Except as otherwise provided by law, all property of the judgment debtor is subject to enforcement of a money judgment." (Code Civ. Proc., § 695.010, subd. (a).)[1] The types of property exempt from this rule are enumerated in sections 704.010 to 704.230. Private retirement accounts are generally a type of property exempt from enforcement of a money judgment. (§ 704.115, subd. (b).) When money in a private retirement plan, as described in section 704.115, subdivision (b), however, "is sought to be applied to the satisfaction of a judgment for child, family, or spousal support" (*id.*, subd. (c)(1)), the trial court must "determine the extent to which the exempt property nevertheless shall be applied to the satisfaction of the judgment" (§ 703.070, subd. (c)). "In making this determination, the court shall take into account the needs of the judgment creditor, the needs of the judgment debtor and all the persons the judgment debtor is required to support, and all other relevant circumstances. The court shall effectuate its determination by an order specifying the extent to which the otherwise exempt property is to be applied to the satisfaction of the judgment." (*Ibid.*) To assist in the foregoing review, section 703.530, subdivision (a) provides, "If property is claimed as exempt pursuant to a provision exempting property to the extent necessary for the support of the judgment debtor and the spouse and dependents of the judgment debtor, the claim of exemption shall include a financial statement," as more specifically described in subdivision (b). "The financial statement shall be executed under oath by the judgment debtor and, unless the spouses are living separate and apart, by the spouse of the judgment debtor." (*Id.*, subd. (c).)

"In general, any property of the judgment debtor that is subject to enforcement of a money judgment is subject to levy under a writ of execution under section 699.710." (*FirstMerit Bank, N.A. v. Reese* (2015) 242 Cal.App.4th 408, 412.) The judgment debtor

---

[1] All undesignated section references are to the Code of Civil Procedure.

may file a claim of exemption after being served with a notice of levy (§ 703.520, subd. (a)), and the judgment creditor, in turn, may file a notice of opposition and notice of motion for an order determining the claim of exemption (§ 703.550, subd. (a)). If a notice of opposition to the claim of exemption is filed, the judgment creditor is entitled to a hearing. (§ 703.570.) "The claim of exemption and notice of opposition to the claim of exemption constitute the pleadings, subject to the power of the court to permit amendments in the interest of justice." (§ 703.580, subd. (a).) At the hearing, "the exemption claimant has the burden of proof." (*Id*., subd. (b).) If the court is "satisfied that sufficient facts are shown by the claim of exemption . . . and the notice of opposition, [the trial court] may make its determination thereon. If not satisfied, the court shall order the hearing continued for the production of other evidence, oral or documentary." (*Id*., subd. (c).) "At the conclusion of the hearing, the court shall determine by order whether or not the property is exempt in whole or in part," but the trial court is not required to make findings. (*Id*., subd. (d).)

In its ruling on Carlisle's claims of exemption, the trial court initially addressed Carlisle's procedural arguments. The trial court rejected Carlisle's contention that his pending appeal of the trial court's January 4, 2018 decision stayed the enforcement of a writ of execution because "no stay was ordered by the court of appeal and [Carlisle] did not post an appeal bond or an undertaking." Second, the trial court found unpersuasive Carlisle's argument that "there were service defects with the notices of levy." Third, the trial court found "nothing procedurally improper regarding [Fauerbach's] engagement of [an] attorney . . . on a limited scope basis on September 9, 2019." Finally, the trial court found "that no protective order was issued for [Carlisle's] accounts" and explained it "had recently ruled again that the issue of a protective order was moot given that no contempt matter was pending."

Turning to the merits of Carlisle's claims, the trial court explained that, following its tentative rulings on Carlisle's procedural arguments on February 25, 2020, "the court

4

indicated to the parties that despite [Carlisle] having had months to provide evidence to the court to establish which accounts are retirement accounts, he had not yet done so. [Citation.] Pursuant to section 703.580, [subdivision (c),] the court continued the matter to February 28[, 2020,] in order for [Carlisle] to produce additional evidence."

The trial court denied Carlisle's claim of exemption as to the El Dorado Savings Bank account and the U.S. Bank account because Carlisle conceded during the hearing that the accounts are not retirement accounts. As to the Bank of the West accounts, the trial court ruled: "[Carlisle] is an experienced attorney with more knowledge and legal skills than the typical self-represented litigant. Despite having ample time to provide evidence about these accounts as the notices of levy were served in September 2019, the court agrees with [Fauerbach] that [Carlisle] has not met his burden of proof that the levy was made upon retirement accounts." The trial court specifically noted Carlisle failed to meet his burden of proof because he "provided no evidence that the money levied was taken from his two [individual retirement] accounts as opposed to the other type of accounts held at this bank," Carlisle "never designated the [individual retirement] accounts at this bank as retirement accounts during the division of assets," and, "even assuming, arguendo, the levy was upon retirement accounts, [Carlisle] did not provide the court with a financial statement setting forth all of his assets and liabilities, his dependents, and all accounts he owns" to allow the trial court to "determine what amount would be reasonably necessary to support him in retirement," as provided in section 703.530.

As to the Union Bank accounts, the trial court discussed the documents provided by Carlisle and found "[n]one of the account statements show any withdrawals from the [individual retirement accounts]" and Carlisle "did not provide any documentary evidence establishing which account(s) the levy was made upon." The trial court further reiterated that, "even assuming[] the levy was upon retirement accounts, [Carlisle] did not provide adequate financial information for the court to determine what amount would be

5

reasonably necessary to support him in retirement." Thus, the trial court denied that portion of Carlisle's claim of exemption.

Next, the trial court considered Carlisle's claim of exemption as to the $30,000 in the Bank of the West account, which, according to Carlisle, constituted a payment for disputed attorney fees. Carlisle asserted the money was for his work in a worker's compensation matter and the money was being held in trust pending resolution of a lien for attorney fees. The lien was ultimately rejected and that decision became final on February 11, 2020.

The trial court denied Carlisle's claim of exemption as to the $30,000, finding he "did not deposit the money into a trust account such as an [Interest on Lawyers' Trust Account]" and instead commingled the money with other funds when he deposited the money into "one of his business accounts." The trial court further found the money was subject to levy because "the claim of exemption period runs from the time of levy through the hearing on the exemption" and the lien dispute decision became final "during the exemption period and prior to the hearings in th[e] matter" before the trial court.

Carlisle appeals.

## DISCUSSION

"It is the appellant's burden to demonstrate the existence of reversible error." (*Del Real v. City of Riverside* (2002) 95 Cal.App.4th 761, 766.) "To demonstrate error, appellant must present meaningful legal analysis supported by citations to authority and citations to facts in the record that support the claim of error. [Citations.] When a point is asserted without argument and authority for the proposition, 'it is deemed to be without foundation and requires no discussion by the reviewing court.' [Citations.] Hence, conclusory claims of error will fail." (*In re S.C.* (2006) 138 Cal.App.4th 396, 408.)

With respect to citations to the record, the appellant must "[s]upport any reference to a matter in the record by a citation to the volume and page number of the record where the matter appears." (Cal. Rules of Court, rule 8.204(a)(1)(C).) "If a party fails to

6

support an argument with the necessary citations to the record, that portion of the brief may be stricken and the argument deemed to have been [forfeited]." (*Duarte v. Chino Community Hospital* (1999) 72 Cal.App.4th 849, 856.) As the reviewing court, we will not perform an independent, unassisted review of the record " 'in search of error or grounds to support the judgment.' " (*McComber v. Wells* (1999) 72 Cal.App.4th 512, 522.)

In addition, the appellant must "[s]tate each point under a separate heading or subheading summarizing the point." (Cal. Rules of Court, rule 8.204(a)(1)(B).) "This is not a mere technical requirement; it is 'designed to lighten the labors of the appellate tribunals by requiring the litigants to present their cause systematically and so arranged that those upon whom the duty devolves of ascertaining the rule of law to apply may be advised, as they read, of the exact question under consideration, instead of being compelled to extricate it from the mass.' " (*In re S.C.*, *supra*, 138 Cal.App.4th at p. 408.) "Failure to provide proper headings forfeits issues that may be discussed in the brief but are not clearly identified by a heading." (*Pizarro v. Reynoso* (2017) 10 Cal.App.5th 172, 179.) Finally, " ' "[a]rguments should be tailored according to the applicable standard of appellate review." [Citation.] Failure to acknowledge the proper scope of review is a concession of a lack of merit,' " rendering the arguments subject to forfeiture. (*Ewald v. Nationstar Mortgage, LLC* (2017) 13 Cal.App.5th 947, 948.)

The foregoing rules apply to all litigants, including those who represent themselves on appeal. (*McComber v. Wells*, *supra*, 72 Cal.App.4th at p. 523.) We deem the majority of Carlisle's arguments forfeited under the foregoing legal principles, as explained *post*.

Before we analyze Carlisle's arguments, however, we note that we do not consider postjudgment items included in the appellant's appendix because the documents do not assist in our review of the trial court's ruling. Nor do we consider any documents that were not filed in the trial court *with regard to the claims of exemption* that form the basis

7

for this appeal. "It is an elementary rule of appellate procedure that, when reviewing the correctness of a trial court's judgment, an appellate court will consider only matters which were part of the record at the time the judgment was entered." (*Reserve Insurance Co. v. Pisciotta* (1982) 30 Cal.3d 800, 813.) Carlisle has identified no exceptional circumstances that would justify deviation from this rule. (See *Vons Companies, Inc. v. Seabest Foods, Inc.* (1996) 14 Cal.4th 434, 444, fn. 3.)

We also do not consider Carlisle's motion for reconsideration or his supplemental declaration in support of that motion that was filed after the trial court issued its ruling. The trial court did not have an opportunity to review and rule on the motion for reconsideration because Carlisle divested the trial court of jurisdiction by filing the notice of appeal prior to the hearing on the motion. (*People v. Espinosa* (2014) 229 Cal.App.4th 1487, 1496 [filing of notice of appeal generally "divests the trial court of jurisdiction to make any order affecting the judgment"].) We find no merit in Carlisle's conclusory assertion, without any citation to the record or any associated legal analysis, that the hearing on the motion for reconsideration "could not be heard within a timeframe which would not obviate [his] right to file an appeal." We now turn to Carlisle's arguments.

Carlisle first asserts the trial court failed to weigh and consider the *Moffat* factors in determining whether the retirement funds claimed by Carlisle to be exempt are necessary for his support in retirement. (Citing *In re Moffat* (Bankr. 9th Cir. 1990) 119 B.R. 201, 206 [listing factors to be considered by the court in determining what is reasonably necessary for support of a debtor].) Carlisle presents his analysis with respect to the *Moffat* factors and then summarily asserts the trial court's decision must be reversed because it "reveals that very little attention was paid to the *Moffat* factors." (Italics added.) We find no merit in this argument.

Initially, we note the trial court cited *Moffat* in its ruling and, under section 703.580, subdivision (d), the trial court was not required to make any specific findings. More importantly, however, the trial court did not need to apply the *Moffat* factors to

8

determine the extent to which the purported retirement accounts are reasonably necessary to support Carlisle. That is because the trial court found Carlisle failed to carry his burden of proving that *any* of the accounts were retirement accounts or other types of property exempt from levy, or that the money levied was taken from a retirement account. (§ 703.580, subd. (b) ["the exemption claimant has the burden of proof"].) The trial court also found that Carlisle failed to provide financial statements, as required by section 703.530, from which "to determine what amount would be reasonably necessary to support him in retirement." In light of these findings, the first of which we affirm and the second of which Carlisle does not challenge, Carlisle's asserted claim of error cannot result in a reversal and we thus do not consider it. (Cal. Const., art. VI., § 13 [no judgment shall be set aside unless "the error complained of has resulted in a miscarriage of justice"].)

Carlisle next argues the provisions of section 703.530 were met because he "filed and served extensive financial documentation," and the trial court failed "to properly incorporate this financial documentation" in its decision. This argument is deemed forfeited. Carlisle provides no citation to the record in that regard and, other than noting he filed several financial statements, fails to explain the import of those filings as it relates to the trial court's alleged error and exercise of discretion. In the absence of any reasoned analysis applying the pertinent standard of review with citations to the record and legal authority, we do not consider the argument.

Carlisle's third argument is that section 704.115 allows for private retirement benefits to be exempt from execution. Carlisle asserts he submitted financial documentation that specifically stated retirement plans were subject to the "levy in September and early October 2019," referring us to exhibits pertaining to Bank of the West and Union Bank accounts. The problem with Carlisle's argument is that it does not address the trial court's ruling, and thus does not provide a basis for reversal.

9

Indeed, as to the Bank of the West accounts, the trial court ruled Carlisle failed to meet his burden of proof because he "provided no evidence that the money levied was taken from his two [individual retirement] accounts as opposed to the other type of accounts held at this bank," Carlisle "never designated the [individual retirement] accounts at this bank as retirement accounts during the division of assets," and, "even assuming, arguendo, the levy was upon retirement accounts, [Carlisle] did not provide the court with a financial statement setting forth all of his assets and liabilities, his dependents, and all accounts he owns" to allow the trial court to "determine what amount would be reasonably necessary to support him in retirement." As to the Union Bank account, the trial court similarly found Carlisle failed to "show any withdrawals from the [individual retirement accounts]," "did not provide any documentary evidence establishing which account(s) the levy was made upon," and "did not provide adequate financial information for the court to determine what amount would be reasonably necessary to support him in retirement." Carlisle fails to explain *how* the trial court erred in making these findings or *how* these findings do not support the trial court's denial of his claims for exemption. In the absence of any cogent legal reasoning, Carlisle has failed to demonstrate the existence of reversible error.

Carlisle's fourth argument concerns section 703.580, subdivision (c). The argument is difficult to follow and unclear. Carlisle initially agrees with the trial court's recitation of section 703.580, subdivision (c) that the trial court "shall" allow for production of evidence that the trial court finds missing or lacking. Carlisle then notes his general dissatisfaction with the deadlines in "the writ/levy system" and asserts various factual arguments without any citations to the record, which we disregard. Carlisle thereafter asserts, if the trial court believed it lacked adequate financial documentation or had questions regarding the documents provided by Carlisle, the trial court should have ordered or allowed Carlisle to produce further documentation or witness testimony.

10

We are unable to address Carlisle's argument because we can find no basis for analyzing any asserted claim of error. In the decision, the trial court wrote it continued the hearing on the exemption claims pursuant to section 703.580, subdivision (c) "in order for [Carlisle] to produce additional evidence." In other words, the trial court gave Carlisle the benefit of section 703.580, subdivision (c). Carlisle presents no argument with reasoned analysis that the trial court was required to provide him with yet another bite at the apple. To the extent Carlisle believes the trial court was required to request additional documentation or evidence until the trial court was satisfied Carlisle proved his exemption claim, we disagree. Not only has Carlisle provided no reasoned argument or cited any legal authority for such a proposition, but also nothing in the statute imposes such a duty on the trial court. In fact, it is clear "the exemption claimant has the burden of proof." (§ 703.580, subd. (b).) In other words, Carlisle had to prove his claim. The trial court did not have a duty to give Carlisle unlimited opportunities to furnish documents and evidence to substantiate his claims of exemption.

Carlisle's fifth argument is also difficult to follow. Carlisle states section 703.610, subdivision (b) provides the trial court "may make any orders proper during the pendency of the proceedings." (Boldface & underlining omitted.) That code provision provides: "At any time while the exemption proceedings are pending, upon motion of the judgment creditor or a claimant, or upon its own motion, the court may make any orders for disposition of the property that may be proper under the circumstances of the case. The order may be modified or vacated by the court at any time during the pendency of the exemption proceedings upon any terms that are just." (*Ibid.*) As Carlisle acknowledges, the statute is permissive. While Carlisle addresses things the trial court "could have" done, he does not assert the trial court erred in any specific regard. We further fail to see the pertinence of the citations to the reporter's transcript in the second part of the argument and disregard them. Carlisle fails to explain the import of the statements and

11

how the statements support any assertion of error. In the absence of finding any ascertainable assertion of error, we disregard the argument.

In his sixth argument, Carlisle states the trial court has the "equitable power to recall . . . or quash a writ of execution and vacate an execution levy." (Boldface & underlining omitted.) Carlisle asks us to "see" two cases but fails to explain with reasoned analysis how the cases apply to the facts of this case or demonstrate error on appeal. Carlisle further attacks Fauerbach's purported failure to provide certain documents (without providing any citations to the record in that regard); states the trial court should have used "its equitable power to ensure a fair result, including but not limited to production of whatever additional documents as the [c]ourt might find to be missing or lacking"; and generally discusses the nature of a trial court's equitable powers. Given the lack of any reasoned analysis by application of legal authority through the prism of the applicable standard of review to the facts in this case (as supported by appropriate record citations), we deem the argument forfeited.

Carlisle next argues, "A motion to quash is a proper remedy to correct any errors or unauthorized acts of the [c]ourt's ministerial officers." (Boldface & underlining omitted.) Carlisle asserts his "pleadings indicate that [he] requested that the levy and underlying writ be quashed and/or recalled" but he provides no citation to the record for this assertion. He further argues he was invalidly or untimely served with various documents but identifies no errors or unauthorized acts by *the trial court's ministerial officers*. It appears Carlisle may be referring to Fauerbach's service of documents; however, we note the trial court found unpersuasive Carlisle's argument that "there were service defects with the notices of levy" and Carlisle asserts no error as to that finding on appeal. Carlisle merely refers us to various record citations regarding statements made in the trial court without indicating, through reasoned analysis, *how* the record citations assist in our review of his appeal *in this case*. We thus do not address the argument.

Carlisle's eighth argument heading states section 918.5 "provides that the trial court has discretion to stay enforcement of a judgment or order when the judgment debtor has another action pending on a disputed claim against the judgment creditor." (Boldface, underlining, & capitalization omitted.) Carlisle asserts he "had a pending claim for a gross overpayment of spousal support," which was not heard until September 21, 2020, and was decided in his favor on December 21, 2020; there was an appeal pending pertaining to a probate court decision, which included a dispute as to "missing funds from the Bank of America [account] during late 2014 and early 2015"; and he filed a motion for reimbursement of the gross overpayment of spousal support on January 21, 2021. Carlisle provides no cogent legal analysis applying any pertinent authority to establish there was "another action" pending on a disputed claim against Fauerbach. Moreover, Carlisle does not address the standard of review and explain how the trial court abused its discretion. He merely summarily asserts the trial court "should have stayed the levy proceedings pending determination of these other matters involving [his] claims against . . . Fauerbach" and "should have continued the hearing on the levy until it could be heard at the same time as [his] June 6, 2018 motion for retroactive modification of spousal support." For the reasons already stated, we deem this argument forfeited and do not address it.

The ninth argument heading merely states, "An excessive levy gives rise to a cause of action for abuse of process." (Boldface & underlining omitted.) Perhaps that is true, but we fail to understand how that has any bearing on *this* appeal. Carlisle's argument does not enlighten us either. Carlisle merely argues the trial court "should have heard [his] motion for retroactive modification of spousal support concurrent with the levy proceedings" and "should have stayed the writs and levy until the [Court of Appeal] had resolved the issues which [he] previously discussed relating to [an appellate case]." He further asserts Fauerbach and her attorney should have done various things with regard to the overpayment of spousal support and complains that "the levy involving the

13

State Compensation Insurance Fund has remained in place." None of these statements pertain to the argument heading and we thus decline to address them. (*Pizarro v. Reynoso*, *supra*, 10 Cal.App.5th at p. 179.)

In his tenth argument heading, Carlisle states, "A levy applies only to the funds which are present in an account at the time of the levy." (Boldface & underlining omitted.) This argument appears to focus on the trial court's ruling as to the $30,000 in the Bank of the West account, which Carlisle asserts was held in trust due to an attorney fee dispute. He discusses provisions of section 699.720 but does not apply any of the provisions to the facts in this case. Carlisle further sets forth various facts without citations to the record and does not address the reasons stated by the trial court in ruling that the money was subject to levy. Given the lack of cogent legal reasoning tailored to the applicable standard of review, we deem the argument forfeited and do not address it.

We deem Carlisle's final argument forfeited for the same reasons. The final argument heading states, "It is inconsistent for the [c]ourt to limit testimony as well as the introduction of documentary evidence, and subsequently find that the [c]ourt lacked sufficient evidence." (Boldface & underlining omitted.) Without providing any citations to the record, Carlisle complains the trial court limited the hearing to one hour, "allowed very limited time to present [his] case," limited the documentary evidence, and refused to allow him to call witnesses. Carlisle refers back to his fourth argument that section 703.580, subdivision (c) provides a trial court " 'shall' allow for production of evidence which the [c]ourt finds missing or lacking." He further details difficulty he had in obtaining documentation regarding the levied accounts and asserts he provided substantial documentation to the trial court whereas Fauerbach's attorney presented no evidence to controvert his testimony or exhibits. Carlisle then quotes portions of the reporter's transcript but provides no explanation as to the pertinence of the quoted sections. Carlisle presents no cogent legal reasoning tailored to the applicable standard of review to demonstrate reversible error.

14

Fauerbach briefly argues we should sanction Carlisle on our own motion "for pursuing this frivolous and dilatory appeal." "Section 907 provides that '[w]hen it appears to the reviewing court that the appeal was frivolous or taken solely for delay, it may add to the costs on appeal such damages as may be just.' Similarly, California Rules of Court, rule 8.276(a), provides that an appellate court has the authority to 'impose sanctions . . . on a party or an attorney for: [¶] Taking a frivolous appeal or appealing solely to cause delay. . . .'" (*McCluskey v. Henry* (2020) 56 Cal.App.5th 1197, 1208.)

"[O]ur Supreme Court has advised us that we should hold that an appeal is 'frivolous only when it is prosecuted for an improper motive—to harass the respondent or delay the effect of an adverse judgment—or when it indisput[ab]ly has no merit—when any reasonable attorney would agree that the appeal is totally and completely without merit. [Citation.] [¶] . . . [T]he punishment should be used most sparingly to deter only the most egregious conduct.' " (*McCluskey v. Henry*, *supra*, 56 Cal.App.5th at p. 1208.)

We decline Fauerbach's invitation to impose sanctions on Carlisle on our own motion and note Fauerbach could have filed (but did not file) a motion of her own accompanied by a declaration supporting the amount of monetary sanction sought. (See *Bak v. MCL Financial Group, Inc.* (2009) 170 Cal.App.4th 1118, 1127-1128.)

Finding no basis for reversing the trial court's May 19, 2020 order, we affirm.

DISPOSITION

The judgment is affirmed. Fauerbach shall recover her costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1), (2).)

/s/

ROBIE, Acting P. J.

We concur:

/s/

EARL, J.

/s/

McADAM, J.*

---

\*      Judge of the Yolo County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

16